Thank you, Your Honor. This is Tim Bechtold on behalf of the Plaintiff, L. B. Your Honor, this case, I should say, I'd like to reserve three minutes in rebuttal. Okay. Your Honors, this case boils down to whether the Bureau of Indian Affairs officer was acting in the course and scope of his employment when he raped L. B. Now, the District Court, relying heavily on Maguire v. State of Montana, found that rape cannot be in the course and scope of employment. Now, Maguire was not a... Can I ask a question? It seems to me that when you set the case up that way, you're to some degree making it more difficult or more difficult for you because there was a whole set of incidents that occurred here where he came to our house and he was on duty and he invokes his authority and so on and so on, and the rape was the end of what happened and it's what she's suing about, but it wasn't an isolated... He didn't just find her on the street and rape her, right? That's exactly... So it seems to me that the entire set of events have to be looked at together in terms of the scope of the employment question. I agree, Your Honor. I think that what the Maguire case was not a Section 229 case at all. It was a Section 214 case, and when the District Court analyzed the scope of employment, it neglected to include analysis under Restatement of Agency 230 and Section 245, which are the sections that are... They are good Montana law. It's just that the District Court never considered them in its analysis. So what Section 230 and what Section 245 require the court to do is to look at that whole panoply of events, the things that led up to, was it part of the whole incident and not just some isolated part of it? But even if you do that, how does this further... I mean, the issue that I wanted to kind of ask you about, how is this in furtherance of the employer's interests here? Right. So that's basically what the government's argument is and what the District Court found. There's no way that the rate could be in furtherance of what the BAA would want their officers to do. But I think that is sort of a very narrow interpretation of what policing is all about. I think a significant part of policing is intimidation and deterrence, and keeping people subjugated is part of the policing role. And so I think that not just assaulting people, but also sexually assaulting people is part of... Are you saying that anytime police intimidate people, they're acting in the scope of their employment, no matter where it is and how it is? Well, I think that not necessarily no matter how it is or where it is, but I think when you're a police officer in uniform on duty and what you're trying to do is whatever you interpret or whatever your department thinks the job is, I think a significant part of policing is intimidating people into not committing crimes or to keeping them under control. But not... Let me take you back to the whole set of facts because I was a little bit confused. Can you help me in the state of the record? He comes into the vicinity with respect to the mother being allegedly driving drunk, and he ascertains that she isn't, but I didn't read the record that he goes to the house to do that. The mother lives elsewhere. He does something with respect to the mother elsewhere, and then he comes to the house. Is that your reading of the record? Correct. So what happened was is LB called into their mother was possibly driving drunk. Her mother arrived at her destination, and so when the officer went to that destination, he saw that the mother there no longer drives drunk. So that's elsewhere. But then one could say at this point everything is cool, so it's a frolic and detour to go to her house. I take it there's then a dispute about whether he knocks on the door and she lets him in or whether he just enters and shows up. Am I correct? There's a dispute about that? There is. That's an uncertain part of the facts. And the view, from your point of view, the view we should take is which? It doesn't matter. It doesn't matter because the officer said that he went to the house to check up on the caller to make sure that she was okay. Okay, so at this point, whatever he is doing is not – it's certainly not in furtherance of some preexisting event. I mean, my analogy was if she's a witness against somebody else and he says, we want you to testify against Joe, and she says, I won't testify. And he says, if you don't testify, I'll rape you. Okay, now that sounds like it's at least somehow related. But here it certainly seems opportunistic. Are you familiar? There's a very recent case called Brendan from the Montana Supreme Court. Have you looked at that? Because it gives a list of factors, such as whether it's an act that the employees commonly perform, the time, place, and purpose, whether the employer had reason to expect. And each of these would certainly not seem to come into play here. As I said, I'd give you some shrift if he was investigating a crime and intimidating a witness. But isn't your theory one that would cover really anything that a police officer on duty does? That could be, Your Honor, except in this case, the police officer specifically said that he was going to the house to check up on the complainer. What does that mean? What was he doing? What do you mean check up? The whole incident with the mother seemed to have nothing to do with anything. Well, I'm not sure nothing to do with anything, but all we can rely on there is what the police officer said. And in this case, he said that he was following up with the complainant. Even though the incident is resolved with the mother, who is the alleged potential miscreant. But he threatens to arrest her, doesn't he, if she doesn't? Is there some reference to threatening to arrest our L.B.? He does tell her he's going to arrest her. And what was the, can you tell me the specific, and maybe I missed something. Based on their conversation, he says if she doesn't have sex with him, he's going to arrest her. What did the language, I mean, what led up to the threat of arrest? The threat of arrest was the reservation is a dry reservation. And so you cannot consume alcohol within the boundaries of the reservation. She was, there were some beer cans on the floor. He said, I got to give you a breath test, come outside. He gave her a breath test. She blew positive, exactly how much was in dispute. But regardless, she had alcohol in her breath. And at that point he said, you know, I'm going to have to take you in. I thought he also said that she was threatened to take away her children too. Or that we have to report her to child services. Right, so he would, because she was consuming alcohol in the presence of her children, she could have her children taken away. And up to that point, to go to Judge Boggs' question, there's no doubt that it was actually within the scope of his employment until that point. At least until that point, right? I mean, he was doing things that... Because, I'm sorry, because the drinking, or he said he saw that she was drinking, that started with the whole mother incident, right? I mean, is that... So that was linked to the mother, correct? To the mother incident? I mean, he said he saw she was driving. When you say he came to check on her, he said he was going to have to arrest her because he suspected that she was driving while intoxicated, or at least that was the inference. Is that, am I correct? That is correct. Well, wait a minute. Why was there an inference that she was driving while intoxicated? No, the inference was that not just that she was driving, but that she had any alcohol at all. So the only link to the mother was that she was the one who had called in about the mother. Right. And I suppose he could have been saying, well, I mean, even if they found that the mother wasn't, in fact, drunk, he could have been coming there to ask her, you know, why did you think she was drunk as a follow-up. We don't really know. Does it really say why he was coming there? Why the fact that she had called the mother in drunk? What, for him to come there at all? Well, other than the presumption that, you know, she said that they had been drinking and her mother may be driving drunk. Oh, that they had been drinking. Yes. Did she say they? Yes. So that was a reason for him to come because nobody was supposed to be drinking. Correct. That's the link to what had happened before, correct? He used that at least as a pretext, if it wasn't the truth. Is that correct? Yeah. If I think it's a, if nothing else, a pretext. And so let me, let me ask you, what's the significance of Montana's adoption, or if you could talk about it, please, of the non-deliverable duty doctrine. And what should we infer from that? Well, I think the inference is that what Montana has now decided is that an employee is liable for the acts of an act like this of its employer of employees. And so when, when they adopted it in Paul, the Montana Supreme court then said, from when we have acts like these, the employer has a non-deliverable duty to be responsible for the acts of their employee. So it would apply. What were the acts like these in Paul? In Paul, it was a, a van driver was driving prisoners and they had to, he wouldn't stop to let them urinate. So they had to urinate in bottles and he would swerve the van to, to humiliate them so that they would spill their urine on each other. And one time when he was swerving them, he rolled the van off the road. So it was clearly an act for his own gratification. He was just humiliating the prisoners to make himself laugh. So they were people that was, that were under the custody and control of the, of the state to start with. Yes. And in that situation, but the, the other courts have since found that rape in several situations applies to that non-deliverable duty. So the Montana district court in both Shepard and in Smith found that rape was a situation where the non-deliverable duty applied. But, but back to the original point, I mean, your honors,  I think that this court can certainly find that the, that the police officer acts within the course and scope of his employment. If the court considers not just section two 29, but also to section 30 and section two 45, which I'll allow the court to have a full analysis of the full situation that's involved. Obviously there's some policy considerations for that as well, but I think that the district court has abandoned, you know, the whole notion expressed in McGuire. And I think that modern jurisprudence would allow the court to consider more factors in the district court. Did you mean the Montana Supreme court? I may have misspoke. I apologize. I mean, was that what you meant that the Montana Supreme court, the Montana Supreme court, I think would, would, if they could consider this issue, I think would, would looked at it differently than they looked at the situation in McGuire. But that's sort of projection rather than, than retrospective. In other words, you're saying that's what they would do if they faced it. Yes, they have not faced this question before. So I think that's a question that, that could probably be decided by the Supreme court or if this court decides to decide it on its own. And so you say we can decide it on our own and disregard McGuire. I mean, we have to live the state law. No, no, I don't think you have to disregard McGuire, but I think McGuire is, is only a partial analysis of the scope and the course and scope argument. It only considers section two 29 without regard to section two 30 or two, four, two 45. And I think if the court looks at those sections, then it will find that the officer Bill Cummings was acting within the course and scope. Our restatement at the time of McGuire, Montana hadn't adopted the secondary statement, but now it has, are they different in any relevant way of leaving out the, the delegated duty question? Well, Montana had adopted section two 29, two 30 and two 45 at the time of McGuire, but the court. Of the secondary statement. Yeah. Of the agency. Right. But the, but the court had not, the court and McGuire didn't even consider those. It only, it only was a section two 14 case. Okay. If you want to reserve time. I do. Thank you. Mr. Hey, please. The court. Tim to target of the district of Montana on behalf of the United States. I don't think there's any real dispute here as to what, what the law in Montana is. Both parties cite to. Primarily to the corny case. And, and then the, the cases following that all sort of reliably. Well, Do you know that case? I, I'm not. It's, it's not one of the cases that cited in the brief. No, it's not. And I just think it's a little peculiar since there's a very recent. Okay. And, and it does at least switch the, the emphasis. Because it says that. Let's see if I can find it. It says, even if not authorized by the employer. And it's self not motivated by any intent or purpose to serve the employer. And employee. He's tortuous conduct may still be incidental to expressly or implicitly authorized conduct. If closely intermingled with. There with, and at least partially intended. As a means to accomplish an expressly or implicitly authorized task or purpose. I don't know. It sounds like a contradictory sentence because it says it doesn't have to be motivated. And then it says, maybe it doesn't. But, but. And then goes on. And the problem there was that. That the. Defendant had. Communicated some information. About this person while she was employed. And that was arguably in. To, to. Accomplish an authorized purpose. But then after she was fired and for a personal vendetta. He continued to send all this information. About her. I'm not. To her employer and so on. And there seems to be no sensible. Fashion, which that was. A way of accomplishing. Something on behalf of the employer. So. At least. It seems to open up the notion that. As I said before, you look at the entire. Circumstance and you ask whether the entire situation. Whether the particular thing that. That's the tour. Was. Closely intermingled. I. I think that's entirely consistent with. With. With Cornick. And it relies heavily on Cornick. But growing out of that. And. And I think the language there is, is important. That arising out of is, isn't enough. They do cite that language or that language. It does have to grow. Well, there's certainly a rose out of. I mean, he is. No. Well, that's what I'm saying. Your honor. It isn't enough that it arises out of. It has to be both arising out of. And in prosecution of. The, the actions that are authorized by the employer. Or, or, or, or that task. So the. The difference there is. And again, Cornick's a good example. The. Employees up there were. We're going to. To deal with an issue. Involving a dispute with a neighboring landowner. The assault that grew out of that dispute. Didn't have to be authorized. It could be entirely contradictory to what was authorized. But it had to. The purpose of doing it was, was to accomplish the task that the master had said. If. If McGuire were decided today by the. What would the outcome be? It would, it would absolutely be the same. And we can. At least with respect to the course and scope of employment. And we, we know that. Or we can get guidance on that. If we look to the. Montana federal district court case of Smith versus Ripley. Because the analysis. That those two. Take are, are, are exactly parallel. In both McGuire and Smith. The court first looks to the question about what's it. Whether the sexual assault was within the course and scope of their duties. And, and applies Montana's furtherance. Test. And determines in both cases easily that that is not something that is for the. Benefit of the employee. And then. But Montana has adopted the non-deligible duty doctrine here. Right. If an officer. Will coming had been a state officer. LB would have a remedy against the state of Montana right now. Is that correct? Or for the actions outside. Well, arguably. I, I think. There is a big question about whether two 14 would apply in this circumstance. Because there's not a preexisting duty here. But in any event, that would be outside of the course and scope of. Of employment and therefore outside as a matter of federal law. Outside of the FTCA. Now, there are several. There are other states. Supreme courts that have. Applying the same. We save a provision. To very similar facts and come to the absence. Come to the conclusion that they're actually. It is within this government. California. Yeah. And I think that's really important. There's really sort of. And this is why the FTCA looks to. What state law defines as course and scope of employment. Because there's a. There's one group of states. We cite to Montana. We also cite. Two cases involving Wisconsin law. Illinois law and South Carolina law. That look to this issue of. Is the action within the furtherance and benefit. For the furtherance of, or the benefit of the interest of the employer. California law. And Louisiana and South Dakota, which, which they, they also say. Cases from apply a different test. The test that California applies. Is in the context of the particular enterprise and employee. And employees conduct. Is it. Not so unusual or startling that it would be unfair. To include the loss resulting among the other costs of the employer's business. That's a. That fundamentally is a foreseeability test. Well, the California case was a police case, right? Was pardon. Was it, it was a police case. Yes. And what, what about the. I guess what I'm asking you is. Is, are any of the cases that you're. Saying are the same. Cases about the use of police authority. Sure. The, the Martin case. The. Martin versus the city of Milwaukee out of. Wisconsin. The gambling case out of Illinois. And. What's important there is when courts that look to foreseeability. And then California is a good example in California. I will know to note in Mary M expressly states that. The employees actions in California lot. Don't have to be for the benefit or furtherance of the interest of the master. California looks to the particular enterprise. So you necessarily have to look to what's foreseeable. Given the powers of a police officer. In those cases that look to foreseeability. And that's fundamentally different. In those cases that look to the, the furtherance or benefit. And, and that's, and that's a necessary result of, of the FTCA looking to state law, that there's going to be divergence on, on, on these issues. Let me ask you this. It seems like under Montana law. That if officer will will come in. Physically assaulted LV. If he had physically assaulted her, that conduct may be considered within the scope of his employment. So why should sexual assault be treated different? I think, I think the best case to look. To. Is the Martin case out of Wisconsin, which applies a similar test. Is there's a big difference between the excessive use of force cases. And, and the sexual assault cases, because again, and Martin goes through a couple of cases that are very extreme, excessive use of course, court force cases, shooting. An individual in the back or, or shooting an individual that had already submitted to police authority. Actions that are certainly outside of what is authorized. But the courts there found that is within the course and scope because the. The person was. The officer was. Enacting their police duties. You know, doing, doing the business of policing, even if they were doing it sort of totally out of, out of. But here. He was within his policing duties. I mean, we have to accept what she's saying. I think at this point and. Or even acknowledges. I can't remember. Sure. But he's, he's there following up. On the incident. You know, that he had, had with her mother and, and, and her. And, and then. Makes a statement about her drinking. And was going to follow up on that. And then sees a beer cans or some sort of sign of alcohol and then threatens to arrest her. If she doesn't have sex with him. And as she acknowledges, she says, all right. He keeps saying something's got to be done about this. Something's got to be done about this. She says, okay. I I'll, I'll take my medicine. I'll take. Go ahead and arrest me. And, and he essentially refuses to. And, and. Who threatens her with, with, with, with this. With sex. And, and again, she acknowledges. Isn't that what you meant all along? So he had fundamentally abandoned his duty. And, and, and was acting entirely for his own gratification. He was misusing his authority. That's why he was punished by the. Convicted by the United States for, for. Violating her rights under, under color of state law. I mean, I understand there may not be a direct connection, but. If he was acting under color of state law. What, what does it mean to be acting in this instance, under color of state law, but outside of. The scope of his authority. And they are, they are different than that analysis here. Certainly he is, he is. Misusing the authority given, given him by. By power of being a law enforcement officer. There's no question about that. He was. What he did was, was wrong and he was punished. And, and, and we asked for even a more severe sentence than he got. But. When the court looks to the question of. Whether an individual is acting within the course and scope of their duties. We look to state law. And then under the law of Montana. The action has to be done for the benefit of, or in the furtherance of. The duties. For this language in Keller and Cormack and in the spreading case about. It could be incidental. And then it gets fuzzy. I don't, I don't know what the state's saying. They say, of course, we're saying at that point, they seem to be saying. That it could be incidental. And at that point, not. Perhaps in furtherance. Given that. Why shouldn't we certify this issue? Because. There's no open question under, under Montana law. As I say. We know that the test under Montana law is it has to be within the furtherance or benefit of the employer. Well, I just read you this. Montana courts have yet. To address whether a law enforcement officer acts within the scope of his employment, when he uses. His authority as an officer to sexually assault a citizen. Isn't that correct? I mean. So why, why is that? Not a question, you know, worthy of certification. In light of the unique. You know, considerations that arise in law enforcement. Contexts that do not arise in other employment contents. And. What I would recommend the court's attention back to is this fundamental is different. Difference in terms of, of what test is applied generally. It isn't. You agree with me that they haven't considered that specific question. Yeah. Yes, that. That fact situation. Has not been decided by the Montana Supreme court, but if I can. So what about the sentence? I read you from Brendan. I'm going to read you the sentence. Even if not authorized by the employer and self, not motivated by any intent or purpose to serve the employer. And employers. Torsion's contact may still be incidental to expressly. Or implicitly authorized. If closely intermingled there with. And then it says, and at least partially intended as a means to accomplish it expressly or implicitly authorized. Task or purpose signing Keller. And then Keller and Kornick. And I. As I said before, those two sentences. The only way to make sense of those sentences. Is that at least partially intended. Must refer to the expressly or implicitly authorized. Conduct not to the incidental conduct or otherwise you'll have an internally contradictory sentence. And in fact, on the facts of this. Of Brendan. At least some of what he did was what couldn't have had it. Had he had anything to do with. Accomplishing an expressly or implicitly authorized task or purpose. So why isn't that at least create enough. Confusion that we should certify this to the Montana Supreme court. Because I don't, I don't think there's any way that you can find that the. That a reasonable jury could find. And I think if you look at either McGuire or the Smith versus Ripley. Recent case. That. The sexual assault. Is in anything, but. Purely for the, for the gratification of the. Of the employee and not. Was it closely intermingled with. Expressly or implicitly authorized. Conduct. So I think that, I think the. The clear state. I'll agree that that sentence is confusing. I think the clear statement of it is the statement in cornic that says that the action has to be. Complained of has to arise out of and be committed in the prosecution of the task. The perhaps the contradiction in Brendan. I'm not sure if it's a contradiction or if it's just bad writing. The part I look at says. Even if the predominant motive was self-interest. It still may be in the scope. If the employee was motivated by any purpose to serve the employer's. Intent. Interest to any appreciable extent. So would you think that officer bull combing. Was his act. Was motivated in any part by serving the employer's interest. As opposed to my example of you're trying to beat a prisoner. To get our witness to get something for the employee employer. I agree your honor. And I think that's, that's the same reason. That's why that's the difference between an excessive force. Issue excessive force effectuating an arrest. Has at least this connection to. To the job duties and the goal. I mean, you know, it could be. It could be. He was basically going to punish her for doing something against the law. I don't know. We don't know what his motive was. I mean, we're guessing that he. Completely let go of any sense. That he was trying to enforce the law. But he came in there saying he was trying to enforce the law. And this was a very perverted way of trying to enforce law. Maybe at least. How do we know it wasn't what's the record on that? Well, the record is, is what she's. I mean, I think you can claim that clearly from the record. As, as, as her statement is. She expressly says. If you got to take me in for this, I guess that's my consequence for drinking. You know, like I, I know better that I, that I should have done it. And then he keeps saying he, he refuses to do, or he doesn't do that. He keeps saying something needs to be done. And she finally says, do you mean sex? And he says, well, something. And she responds by saying, well, you know, if that's what. What you've been, what you've been at all along. If that's what you've been talking about, you should have just said something. You know, instead of all this, if you would have. Just said something that could have been easier than doing all this. And Bill Cummings responds by saying, yeah. So there it is. It is clear in the record that what he's motivated. That he's not performing a task as a law enforcement officer anymore. He is. He said something needs to be done, meaning something. To get you to stop doing this stuff. I, I don't know that that's a reasonable interpretation of those. Okay. Your time is up. Thank you very much. Thank you very much.  Beckton. Briefly. Thank you, your honor. The next line of Brendan that after judge Boggs quoted was. Talked after he's cited that. Reference to restatement. Second evasion to 36. The, you know, the next line is about the dual or mixed motive. That doesn't preclude. A finding that the, that the. No, the, the agent was acting in furtherance of. His employer. And here are the, I mean, the, the mixed motive that the officer bull coming had was both to deter and to punish. I mean, that's, that's what he was doing. He may have had some. He may have had some personal gratification in, in there, but the. Probably did primarily personal gratification. It could have been primarily. The deterrence and the punish. I mean, explain that to me. Well, I think that the whole idea of, of, of policing again, I think. A part of policing is intimidation. And, you know, please show up with a lot of equipment, a lot of stuff that can hurt you. And part of the deal is what the things that not only can they hurt you, but they can make your life very difficult by taking your kids away or making you lose your job. And so part of the role of policing is significantly intimidation and that's deterrence. But I think the Brennan case, I think makes it clear that Montana law isn't quite so clear as McGuire was, you know, McGuire. If it was McGuire was decided today, I think it's very clearly, it's a section two 14 case and the state would be liable. All right. In this situation, the. The state would be liable on the non-delegable duty. Correct. Right. And this is, this is a situation where I think if this court looks at the current state of the law in Montana, I think by including analysis of the other sections of the restatement, they can find. Even you can find that the, that officer bull coming was acting the course and scope just under the current Montana scheme under Brendan Kornick and Keller. However, You wouldn't have any objection to certifying the case. I would not, I would not. I think that, you know, judge McGuire is absolutely correct. This is a situation that the court in Montana has not considered specifically. And I think it's an important one for them to look at. Okay. Thank you both very much for your. Thank you. Your honors. Arguments in a difficult case. In the case of LV versus United States is submitted and we'll go to value versus McKelvin. I don't know whether the IT issues have been resolved by the lawyers in that case, but we'll see. Thank you.
judges: Boggs, Berzon, Murguia